CALDWELL LESLIE & PROCTOR, PC
Kelly L. Perigoe (Cal. Bar No. 268872)
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5525
Telephone: (213) 629-9040
Facsimile: (213) 629-9022
perigoe@caldwell-leslie.com

WILLIAMS & CONNOLLY LLP
Nicholas J. Boyle (*pro hac vice application forthcoming*)
David K. Baumgarten (*pro hac vice application forthcoming*)
Eric J. Hamilton (Cal. Bar No. 296283; *C.D. Cal. admission pending*)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
nboyle@wc.com
dbaumgarten@wc.com
ehamilton@wc.com

*Attorneys for Plaintiffs CoStar Realty*
*Information, Inc., and Apartments, LLC*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC., and APARTMENTS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>APARTMENT HUNTERS, INC., KEVIN SHAYAN, and STEVEN SHAYAN,<br><br>Defendants. | Case No. 15-cv-02111<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs CoStar Realty Information, Inc. and Apartments, LLC (collectively, "CoStar"), by and through its undersigned counsel, brings this Complaint against Apartment Hunters, Inc. ("Apartment Hunters") and its co-owners, Kevin Shayan and Steven Shayan (collectively, "the Shayans," and together with Apartment Hunters, "Defendants"), and alleges as follows:

## **PRELIMINARY STATEMENT**

1. CoStar brings this suit to redress Defendants' flagrant and widespread copyright infringement and misappropriation of information. Defendants' business is based, in significant part, on the willful and systematic theft of CoStar's intellectual property. Without permission, Defendants have displayed hundreds, if not thousands, of CoStar's real estate listings on their websites, including CoStar-copyrighted photographs and CoStar-collected and -verified information. Defendants have infringed CoStar's photographs and misappropriated its time sensitive real estate listing information, and thereby are unfairly competing with CoStar's Apartments.com website.

2. Defendants repeatedly have been sanctioned for violating the California Real Estate Law, including most recently for displaying, without authorization, third party real estate listings and copyrighted real estate photographs that Defendants had doctored to try to hide their misconduct. Undeterred, Defendants' massive piracy scheme continues apace, and now targets CoStar's intellectual property.

3. In order to protect its business, redress past harm, and deter further unlawful conduct, CoStar is entitled to, among other remedies, millions of dollars in damages and a permanent injunction for copyright infringement, misappropriation, and unfair competition.

## I. COSTAR'S BUSINESS

4. Over the past three decades, through enormous effort and expense,

CoStar and its affiliates have developed an unparalleled database of commercial and multi-family residential real estate information, which includes millions of professionally-shot, copyrighted photographs.  This database is the engine that drives CoStar's business, attracting paying subscribers and licensees to its various informational products, analytical tools, and online marketplaces.

5.     In April 2014, CoStar Group, Inc., the parent company of CoStar Realty Information, Inc., acquired Apartments, LLC, the operator of Apartments.com.  Apartments.com is a leading national online apartment rental resource and database used by renters, property managers and owners.  In the ensuing ten months, CoStar integrated its commercial real estate database with Apartments.com's marketing platform, and assigned more than one thousand researchers to verify existing information on multifamily properties, collect new information, and take photographs of the exterior, common areas, individual units, amenities and surrounding neighborhoods of these properties.

6.     Simultaneously, CoStar revolutionized the way people can search for apartments by showing *real time* availabilities across both paid listings and unpaid listings (*i.e.*, apartments available for rent that were identified independently by CoStar researchers), offering innovative map-based searching and plan commute tools, and displaying rich original content on local culture and neighborhood features.

7.     Based on these efforts, CoStar re-launched Apartments.com in February 2015, providing users access to an unmatched range of verified multifamily real estate listings and information, including, for the first time, the photographs taken by CoStar researchers and drawn from CoStar's newly integrated backend system.

8.     CoStar's copyrighted photographs, as well as the other listing information and materials in its databases, are central to CoStar's and its affiliates'

business, and are a crucial driver of the subscription and license fees and advertising sales that constitute CoStar's primary revenue streams.  For this reason, CoStar protects its intellectual property by, among other things, regularly registering its photographs with the United States Copyright Office.

9.     Since re-launching Apartments.com, CoStar has continued to publish real-time apartment data and availability information, making updates to about 75,000 listings every day.  Keeping listing information constantly updated is expensive, but differentiates Apartments.com and adds significant value to consumers, who typically are focused on viewing information about apartments that are actually available to rent.

## II.    DEFENDANT'S INFRINGEMENT AND MISAPPROPRIATION

10.     Defendants' business, upon information and belief, is based in significant part on unlawfully exploiting CoStar's intellectual property.

11.     Upon information and belief, Defendants operate a network of at least eleven domain names and websites, which are similarly structured:  each allows users to view apartment listings for a number of markets, predominantly in California.  The majority of Defendants' websites appear to require a user to pay a monthly membership fee (of $49) to access the listings contained therein.

12.     Upon information and belief, Defendants procure a substantial portion of the listings displayed on their network of websites, including the listing information and photographs within them, by copying content from other internet listing sites without authorization—including from Apartments.com.

13.     Indeed, Defendants' network of websites prominently display a substantial number of CoStar's listings, including the copyrighted photographs contained therein, of multifamily properties located in multiple California markets. CoStar-copyrighted photographs and real-time listing information have been displayed without authorization on at least nine different sites owned or operated

by Defendants:  (a) ApartmentHunterz.com; (b) 4rentinla.com; (c) 4rentinnewyork.com; (d) wetakesection8.com; (e) ifindrentals.com; (f) featuredrentals.com; (g) leaseinsandiego.com; (h) rentinsanfrancisco.com; and (i) ineed2move.com.[1]

14.     Although the full scope of Defendants' infringement and misappropriation is impossible to determine without discovery, Defendants appear to have copied and displayed on their network of websites dozens, if not hundreds, of CoStar's listings, including the CoStar-verified information and the hundreds, if not thousands, of CoStar-copyrighted photographs contained within those listings. Even without access to Defendants' internal documents, CoStar has discovered more than one hundred of its copyrighted photographs on ApartmentHunterz.com alone, suggesting that discovery will reveal scores of additional instances of past or ongoing infringement and misappropriation just on that website.  And discovery into the other websites owned or operated by Defendants—eight of which have already been discovered to be displaying CoStar copyrighted photographs— will only further multiply the documented scope of their infringement of photographs and misappropriation of time-sensitive listing information.

15.     CoStar has not granted Defendants any rights over any of its copyrighted photographs or its time-sensitive listing information.  Defendants have taken, copied, published, distributed, and publicly displayed CoStar's photographs and real-time listing information without authorization to further their business and generate profits for themselves.

16.     Defendants have made commercial, competitive use of Apartments.com, including unauthorized copying of the CoStar-verified, time-sensitive listing information, to further their business and generate profits for

---

[1] As of December 17, 2015, one of these websites appears to have been taken offline, and two others now appear to redirect visitors to ApartmentHunterz.com.

themselves.

17.    Recognizing the unlawful nature of their scheme, Defendants have taken numerous steps to attempt to conceal their actions, including cropping and otherwise altering the photographs posted on their websites to remove the CoStar logo.  Further, Defendants appear to be rotating the IP addresses from which they systematically copy CoStar's photographs and time-sensitive listing information, in order to circumvent CoStar's abuse detection software.

18.    Accordingly, Defendants intentionally—and on a systematic basis—have infringed CoStar's copyrights, in violation of federal law, and misappropriated time-sensitive information from Apartments.com.  Apartment Hunters acts through the Shayans, who are instrumental in Apartment Hunters' unlawful activities and themselves have infringed CoStar's copyrights and misappropriated Apartments.com's information.  Moreover, as co-owners and senior executives of Apartment Hunters, the Shayans have caused, contributed to, and/or induced Apartment Hunters' infringement, misappropriation, and unfair competition.

19.    Defendants' conduct is knowing, willful, and volitional, and forms part of a pattern of repeated disregard for the law and intellectual property owners.  Over the last decade, Defendants have been sanctioned on three separate occasions by the California Bureau of Real Estate for violations of the California Real Estate Law (Cal. Bus. & Prof. Code §§ 10000 *et seq.*), including for conduct substantively identical to the activities at issue here.  Despite these repeated sanctions, and the loss of Apartment Hunters' license to operate, Defendants brazenly continue to engage in the same sorts of unlawful conduct.

20.    Defendants' unlawful actions have harmed CoStar in ways that cannot be measured fully and cannot be remedied fully by monetary damages.  CoStar brings this lawsuit to obtain damages and compensation for Defendants' conduct

and an injunction preventing further irreparable harm.

## THE PARTIES

21.　　Plaintiff CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with corporate offices located at 1331 L Street, N.W., Washington, DC 20005.

22.　　Plaintiff Apartments, LLC, which directly operates Apartments.com, is a corporation organized and existing under the laws of Illinois with corporate offices located at 222 West Adams, 15th Floor, Chicago, IL 60606.

23.　　Defendant Apartment Hunters, upon information and belief, is a corporation organized and existing under the laws of California (entity number C2551818) with its principal place of business located in Dana Point, California. Apartment Hunters' exact business address is uncertain; the California Secretary of State's database lists an address of "Suite 148, Dana Point, California 92629." The address for its agent for service of process is 33592 Moon Ring Court, Dana Point, California 92629.

24.　　Defendant Steven Shayan, upon information and belief, is the President or Co-President and owner or co-owner of Apartment Hunters. Upon information and belief, Steven Shayan is domiciled in Orange County, California, and uses the address of and/or resides at 32565 Golden Lantern Street, Dana Point, California 92629-3261. Upon information and belief, Steven Shayan personally participated in, directed, and benefitted from Apartment Hunters' infringement.

25.　　Defendant Kevin Shayan, upon information and belief, is the President or Co-President and owner or co-owner of Apartment Hunters. Upon information and belief, Kevin Shayan is domiciled in Los Angeles County, California, with a last known address of 201 North Robertson Boulevard, Suite 202, Beverly Hills, California 90211. Upon information and belief, Kevin Shayan personally participated in, directed, and benefitted from Apartment Hunters'

1   infringement.

2   26.   Upon information and belief, the following domain names are owned

3   by, controlled by, and/or registered to Apartment Hunters, Steven Shayan, and/or

4   Kevin Shayan:  (a) ApartmentHunterz.com; (b) 4rentinla.com; (c)

5   4rentinnewyork.com; (d) wetakesection8.com; (e) ifindrentals.com; (f)

6   featuredrentals.com; (g) leaseinsandiego.com; (h) rentinsanfrancisco.com; (i)

7   w6.lt; (j) listmyrentals.com; and (k) ineed2move.com.[2]

8   27.   Upon information and belief, at all times relevant hereto, Defendants

9   acted under common ownership and control and/or served as the agents of one

10   another.

11   **JURISDICTION AND VENUE**

12   28.   This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.

13   The Court has federal question jurisdiction over claims arising under that statute

14   pursuant to 28 U.S.C. §§ 1331 and 1338(a).  The Court has supplemental

15   jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367

16   because these claims are so related to the federal-law claims that they form part of

17   the same case or controversy.

18   29.   The Court has personal jurisdiction over Apartment Hunters because,

19   among other reasons, Apartment Hunters' principal place of business is in Orange

20   County, California.

21   30.   The Court has personal jurisdiction over the Shayans because, among

22   other reasons, they reside in California and have done, and are doing, business in

23   California, including the conduct alleged here.

24   31.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and

25   1400(a) because Defendants reside in this judicial district and a substantial part of

26
27
28

[2] The website ineed2move.com appears to have been recently taken offline.  As of December 17, 2015, several of the other websites appear to function solely as landing pages that immediately redirect visitors to ApartmentHunterz.com.

the events or omissions giving rise to CoStar's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

## I.   COSTAR AND ITS BUSINESS

32.   CoStar, along with its affiliates, is a leading provider of commercial real estate information, analytics, and online marketplaces, with three decades of experience in collecting and curating real estate information.

33.   Like many technology companies, CoStar's business began in its founder's basement with a simple idea:  empower commercial real estate brokers with researched, unbiased commercial property information.  Since its founding, and thanks to investment in excess of one billion dollars, and the efforts of more than 2,900 employees, CoStar and its affiliates have become a leading provider of commercial and multi-family rental real estate information.

34.   All of CoStar's and its affiliates' products revolve around one asset: the company's database of real estate information, which includes verified information about apartment communities and apartment availability in real time, integrated with millions of copyrighted photographs.  The database is part of a suite of online services that include resources and tools for property owners, managers, and potential renters.  CoStar and its affiliates generate and update the database's content at a cost of over $70 million each year.

35.   CoStar's research team has more than 1,200 trained professionals who each year make millions of changes to the database, canvass more than half a million properties nationwide, and take more than one million new photographs.

36.   CoStar and its affiliates have offered subscription services to, among others, the commercial real estate market and multifamily property managers and owners for over a decade.  The resulting fees, which vary according to the scope of access and analytical detail, products, and services a user seeks, generate a

significant portion of CoStar's and its affiliates' revenue.  CoStar also profits via advertising sales to residential rental property managers and owners, who pay fees to obtain enhanced visibility for their listings.  CoStar uses these revenue streams to cover the millions of dollars it and its affiliates spend every year to take professional photographs of real estate and generate and verify the listing information in its database.

37.     Constant innovation drives the success of CoStar and its affiliates. Last year, *Forbes* magazine recognized the CoStar Group, Inc. as one of the world's most innovative growth companies.

38.     In April 2014, a CoStar affiliate acquired Apartments.com (the "Acquisition"), a leading national online apartment rental resource used by renters, property managers, and owners.

39.     Prior to CoStar's acquisition, Apartments.com and its affiliates developed an extensive nationwide, online platform for listings of both single- and multi-family rental properties.  All listings were paid advertisements, integrating information and photographs submitted by paying subscribers—property managers and owners—who also received access to cutting-edge marketing tools, capabilities, and analytics as part of their subscriptions.  Renters and prospective renters could search the Apartments.com platform for free.  The subscription fees paid by property owners and managers generated a significant portion of Apartments.com's revenue.

40.     At the time of the Acquisition, CoStar's commercial real estate database already contained detailed verified information on (and, in the majority of instances, photographs of) hundreds of thousands of multi-family properties—*i.e.*, apartment buildings.

41.     Following the Acquisition, CoStar invested significant financial and technological resources to upgrade Apartments.com's technology and integrate the

Apartments.com platform with its existing real estate information, paving the way for CoStar to re-launch an entirely overhauled Apartments.com website in February 2015.  Apartments.com now integrates CoStar's independently researched and verified multifamily property content, including copyrighted photographs, with a redesigned consumer website aimed at providing renters and prospective renters the best search experience possible.  As a result, following the re-launch of Apartments.com, the detailed property information and photographs that CoStar had developed and taken over many years are now available to renters who search the Apartments.com website.

42.     Additionally, between the time CoStar acquired and re-launched Apartments.com, more than one thousand CoStar researchers participated in researching, visiting, photographing, and otherwise collecting and verifying information about more than 400,000 multifamily rental properties—almost certainly the largest research effort ever directed at the apartment industry in the United States.  The results of this research, including the copyrighted photographs taken by hundreds of CoStar professional photographers, are proprietary to CoStar and not available through any other apartment rental website.

43.     Including these recent technological and research investments, CoStar has now invested approximately $1 billion developing its multifamily rental-related products.  As a result of CoStar's investments and efforts, it now provides up-to-date, time-sensitive information and analytics about more than 470,000 multifamily rental properties in 368 markets across the country.

44.     The scope of Apartment.com's verified information, including the professional photographs taken by CoStar researchers and drawn from CoStar's newly integrated database, distinguishes Apartments.com from its competitors.

45.     Apartments.com is also distinguished from its competitors by the real-time nature of its listings, which rely on CoStar's unmatched dataset of more than

60 million rent observations.  CoStar constantly adds to and updates that dataset with information from three distinct sources: listings posted on the Apartments.com leading network of sites; data collected from public sources; and real-time data actively collected by CoStar's research team, which makes announced and unannounced calls to more than 75,000 apartment communities each month.

46.     Apartments.com advertises the accuracy of its time-sensitive listings as a selling point for its users—both potential tenants who search the site for free and property owners and managers who pay to advertise.  For instance, the Apartments.com advertisers' home page prominently proclaims the advantage of "Real Time Intelligence" provided by the integration of Apartments.com directly with property management companies' rental inventory systems.  *See* <http://www.Advertise.Apartments.com> (last accessed Dec. 15, 2015).  Apartments.com's popular television advertising campaign featuring Jeff Goldblum also touts the site's unmatched inventory of units that are available for rent.

47.     Based on the unmatched scope of its verified information, including its professional photographs, and the real-time accuracy of its time-sensitive listing data, Apartments.com has built and maintained an enormous user base of potential tenants.  That large user base of potential tenants in turn attracts property managers and owners to purchase advertising packages from Apartments.com to enhance the visibility for their listings among the potential tenants searching the website, generating the fees that constitute a significant portion of the company's revenue.  Without the fees earned from Apartments.com's web traffic, CoStar could not and would not bring its verified, time-sensitive information to the market.

## II.     COSTAR'S INTELLECTUAL PROPERTY

48.     CoStar's intellectual property is at the root of the CoStar database and

therefore is central to its business.  A key element of CoStar's intellectual property is its repository of photographs of commercial and multifamily real estate.  CoStar owns those photographs and registers them with the United States Copyright Office.

49.   CoStar and its affiliates—including Apartments.com—take other steps to protect CoStar's property, including its time-sensitive listing information.

50.   At all relevant times, both the Apartments.com home page and each Apartments.com listing from which Defendants copied CoStar owned photographs and CoStar-collected and -verified information contained a hyperlink to Apartments.com's terms of service (the "Terms of Service"), which govern use of Apartments.com.  *See* <http://corporate.apartments.com/disclaimers/terms-of-service/>.

51.   The Terms of Service warn users that by using Apartments.com, they "represent and warrant that You are not a competitor of Apartments.com or any of its affiliates."  *See id.*

52.   The Terms of Service further advise all users that:

> All information and content available on this Site
> (collectively, 'Materials') is protected by copyright and
> other intellectual property laws.  The Materials are
> owned by Apartments.com and its affiliates, and/or their
> respective licensors and suppliers (collectively,
> 'Licensors').  The Materials are intended for personal and
> noncommercial use only.  *You may not copy, reproduce,*
> *sell, license, publish, distribute, modify, display, perform,*
> *repost or otherwise use any portion of the Materials in*
> *any other way or for any other purpose without the prior*
> *written consent of Apartments.com.*

*See id.* (*emphasis added*).

53.    The Terms of Service further prohibit the use of "any robot, spider or other automatic device, or a manual process, to . . . copy web pages or the Materials contained in the Site or for any other unauthorized purpose." *See id.*

**III.    DEFENDANTS' UNLAWFUL BUSINESS MODEL**

54.    Upon information and belief, Defendants' business plan is built, in significant part, on infringing and misappropriating CoStar's proprietary content.

55.    Upon information and belief, Defendants' unlawful scheme operates as follows:

56.    Defendants obtain pre-existing apartment rental real estate information, including CoStar-copyrighted photographs and time-sensitive CoStar listings to which they have no rights, and copy the content they wish to duplicate onto computer servers that they own or that are provided to them.

57.    Defendants then republish and publicly display that content—including, without authorization, CoStar's copyright-protected photographs and CoStar-verified listing information—on the network of websites they own and/or control, including without limitation ApartmentHunterz.com.

58.    On information and belief, Defendants employ an automated copying or scraping process to enable a high volume of copying.  In a three-week period through November 2015, for instance, IP addresses believed to be controlled by Defendants were responsible for more than 160,000 hits on Apartments.com, predominantly in irregular bursts (*i.e.*, thousands of hits only seconds apart from one and other).  Such a staggering quantity of site visits, particularly in the observed pattern, is possible only with the use of automated tools.  Defendants appear to periodically update the information and photographs copied without CoStar's permission, apparently in high volume batches, further indicating the use of an automated copying or scraping process.

59.     On information and belief, Defendants intentionally sought to conceal their automated copying or scraping process, employing more than 500 different IP addresses to access Apartments.com.  Such rotation of IP addresses is a known tactic used by copyright pirates to attempt to circumvent a website's anti-abuse monitoring software.

60.     In many, if not all, instances, Defendants modify CoStar's copyright-protected photographs before posting them on their network of websites, in hopes of disguising Defendants' unlawful use.  For instance, the original version of a CoStar photograph displayed on Apartments.com will include CoStar's logo in the bottom right corner.  CoStar's investigation has found that in every instance in which a CoStar photograph is displayed on ApartmentHunterz.com, the original CoStar photograph has been cropped or otherwise modified so that CoStar's logo no longer is visible.

61.     The consequent mass infringement of CoStar's copyrighted photographs and misappropriation of the associated time-sensitive verified listing information enables Defendants to exploit the property and work of others, and thereby allows Defendants to provide listings in numerous markets throughout California and beyond with minimum investment.

62.     Defendants use the information they have obtained through mass infringement, including CoStar copyright-protected photographs and CoStar-verified listing information, to create listings on their network of websites that (falsely) suggest they are authorized to solicit prospective tenants for those properties on behalf of the property owners, managers, or other authorized agents.

63.     In most cases, the copied listings posted on Defendants' network of websites include both the CoStar copyright-protected photographs and all the CoStar-verified time-sensitive information available on Apartments.com, *e.g.*, availability, pricing, apartment size, apartment features, and building amenities.

64.    Defendants' users (potential renters) may search the listings provided by Defendants' network of websites, including the listings created with information and photographs wrongfully obtained from CoStar.  While these basic searches are free, the majority of Defendants' websites charge their users a subscription fee (generally set at $49 per month) to access the property address and contact information (which includes information impermissibly copied from CoStar).

65.    Recognizing the time-sensitive value of apartment listings, the websites controlled and/or owned by Defendants make various claims regarding the accuracy and timeliness of their listings.  These statements are made with the intent to induce potential renters to use Defendants' network of websites instead of using other websites that provide residential real estate rental listings, including Apartments.com.

66.    By way of example, ApartmentHunterz.com claims that "our unique, date-sensitive, rental software *updates the listings on a daily basis*, so that the data you receive from us is the *most accurate and up-to-date information available on the Web today*."  *See* <http://www.apartmenthunterz.com/company> (last accessed Dec. 17, 2015) (emphases added).   The website further "guarantee[s]" that its "listings are the most complete and come from [sic] most reliable and reputable sources in the Areas [they] cover." *See* <http://www.apartmenthunterz.com/help/kbase/tenant/271/4821> (last accessed Dec. 17, 2015).

67.    By way of example, 4rentinla.com claims that members receive access to "97,000+ *hourly-updated* rental listings" and "*Real-Time* vacancies just entered in real time." *See* <http://www.4rentinla.com/> (last accessed Dec. 17, 2015) (emphases added).

68.    By way of example, featuredrentals.com claims that "[w]e *update our*

*databases constantly* so you are always guaranteed of the ***most up-to-date*** listings for the area." *See* <http://www.featuredrentals.com/company> (last accessed Dec. 17, 2015) (emphases added).

69.    In this way, Defendants use listings copied from CoStar without its authorization, including CoStar-copyrighted photographs and CoStar-verified time-sensitive listing information, to induce its users to pay subscription fees—fees that, upon information and belief, provide Defendants' only significant revenue stream.

70.    In short, upon information and belief, Defendants' business model is built upon systematically copying and appropriating without permission, and then regurgitating, other people's data, including CoStar-copyrighted photographs and CoStar-verified time-sensitive listing information, to induce users of their network of websites to pay monthly subscription fees.

71.    Defendants' pattern of cropping of CoStar photographs so that CoStar's logo no longer is visible underscores the intentional and willful nature of their copyright infringement and demonstrates that Defendants understand their actions are unlawful.

72.    Upon information and belief, Defendants' parasitic business model reflects the fact that adopting a lawful approach—taking and developing their own database of millions of photographs and real-time listing information—would be both cost- and time-prohibitive.  Upon information and belief, Defendants have few employees, if any.  Working with such limited manpower, the Shayans could not possibly develop the broad informational and photographic database that CoStar and its affiliates have developed and update in real-time based on the labor of *thousands* of employees and contractors.

73.    Upon information and belief, Apartment Hunters' unlawful scheme is the product of the Shayans' actions.  The Shayans are the owners and/or senior executives of Apartment Hunters, and Apartment Hunters acts through the

1  Shayans, who engage in the conduct described herein.

2      74.    Upon information and belief, in addition to infringing CoStar's

3  copyrights and misappropriating CoStar's verified information themselves, the

4  Shayans personally directed, participated in, exercised control over, and benefited

5  from the specific misconduct detailed below, and therefore have caused,

6  contributed to, and/or induced Apartment Hunters' infringement, misappropriation,

7  and unfair competition.  This includes, but is not limited to, adopting and pursuing

8  a business plan dependent upon massive copyright infringement, misappropriation

9  of time-sensitive listing information, and unfair competition.

10 **IV.    EXAMPLES OF DEFENDANTS' INTENTIONAL INFRINGEMENT**

11 **OF COSTAR'S COPYRIGHTED CONTENT AND MISAPPROPRIATION**

12 **OF COSTAR'S VERIFIED LISTING INFORMATION**

13     75.    Although the full breadth of Defendants' operation and consequent

14 copyright infringement and misappropriation cannot be known until discovery is

15 completed, CoStar is aware of numerous instances of Defendants unlawfully

16 copying, republishing, distributing, publicly displaying, and appropriating CoStar's

17 intellectual property without CoStar's permission.

18     76.    Indeed, Defendants' network of websites is replete with CoStar-

19 copyrighted content and CoStar-verified time-sensitive listing information.  A

20 sample of listings displaying CoStar-verified information and 93 total instances of

21 infringement of CoStar-owned photographs found just on ApartmentHunterz.com

22 over a one week period is attached as Exhibit A.

23     77.    At the time ApartmentHunterz.com displayed each of those listings,

24 CoStar had recently verified the apartments' time-sensitive rental availability.

25     78.    CoStar owns the exclusive rights in each of the infringed photographs

26 detailed in Exhibit A.  Prior to the filing of this suit, CoStar has validly registered,

27 or has submitted a valid application for registration for, each of the photographs

28

detailed in Exhibit A with the United States Copyright Office.

79.    Defendants copied, republished, distributed, publicly displayed, and appropriated on ApartmentHunterz.com without authorization each of the CoStar-verified listings and copyrighted photographs detailed in Exhibit A.

80.    Upon information and belief, Defendants' unlawful copying, republishing, distributing, public display, and appropriation of the CoStar-verified listings and CoStar photographs began in the months following CoStar's previously described "re-launch" of Apartments.com.

81.    On information and belief, a valid registration was obtained or a valid registration application was submitted by CoStar for each photograph detailed in Exhibit A prior to Defendants' first infringement of the photograph.

82.    By themselves, the examples of Defendants' infringement summarized in Exhibit A establish the breadth of Defendants' intentional unlawfulness and render Defendants liable for millions of dollars in damages.  But the true scope of Defendants' infringement almost certainly is much broader.  The examples in Exhibit A only are a snapshot of Defendants' infringement, taken from one of Defendants' network of websites over a limited time period, suggesting they are a mere fraction of Defendants' actual infringement, both on ApartmentHunterz.com and the other websites owned or operated by Defendants.

83.    The sample of Defendants' misappropriation and infringement contained in Exhibit A evidences Defendants' systematic efforts to exploit CoStar's intellectual property.  For instance, as of November 13, 2015, the webpage located at <http://www.apartmenthunterz.com/details/149690006> displayed a listing for an apartment at Victoria Village, 6601 Victoria Avenue, Highland, CA 92346 that relied on an Apartments.com listing (and on CoStar's confirmation that the apartment was available for rent).  The  "Overview" tab of that webpage displayed CoStar-verified information; the "Photos and Tours" tab of

1  that webpage displays both thumbnail and full-size versions of five Co-Star

2  copyrighted photographs, including the below example:

3  *"Overview" tab of listing:*                    *"Photos & Tours" tab, displaying two*

4                                                   *versions of one of the CoStar photographs:*



84.     Upon information and belief, Defendants know they are not authorized to copy, republish, display, or distribute CoStar's photographs or time-sensitive listing information on or via their network of websites.

85.     Defendants' infringement is willful, intentional, volitional, and of a purposeful nature.  Defendants' actions demonstrate their willful disregard for CoStar's intellectual property.  For example, as discussed above, Defendants have attempted to disguise their systematic high-volume copying of CoStar's photographs and information by rotating through more than 500 IP addresses.

86.     Similarly, Defendants have taken steps to disguise the extent of their copyright infringement by systematically modifying CoStar's copyright-protected photographs before posting them on ApartmentHunterz.com, including by cropping the CoStar photographs so that CoStar's logo no longer is visible.

87.     For example, as of October 27, 2015, the webpage available at the URL <http://www.apartmenthunterz.com/details/148849470> displayed a listing for an apartment at Glenwood Apartments, 18325 Vanowen Street, Reseda, CA 91335 that included CoStar-verified information and cropped versions of two CoStar-copyrighted photographs.  At right is a screen-capture of the webpage, and below is a comparison of (a) a higher-resolution version of one of the cropped photos— with part of the building cut off by the presumably-automated cropping effort— taken from Defendants' website, and (b) the original copyrighted photo, bearing the CoStar logo, taken from Apartments.com:



1    *The severely cropped photograph displayed on ApartmentHunterz.com*:



10   *The original Co-Star copyrighted-photograph, watermarked with the CoStar logo*:



25        88.    In many instances, Defendants apparently not only have cropped the
26   CoStar photographs displayed on ApartmentHunterz.com so that CoStar's logo is
27   no longer visible, but also have taken a further step to disguise their cropping—

1   adding a semi-transparent text banner, reading "For rent in [City]," at the bottom of

2   the photograph.  In each case, the banner—though created to look as if merely

3   superimposed over the bottom of the photograph—is actually an addition to the

4   bottom of the photograph.  These banner additions appear intended to distract

5   viewers from the fact that the dimensions of the cropped photographs would

6   otherwise look unnatural.

7        89.    For example, as of October 27, 2015, the webpage available at the

8   URL <http://www.apartmenthunterz.com/details/147678002> displayed a listing

9   for an apartment at 835 W Avenue L, Lancaster, CA 93534 that included CoStar-

10  verified information and two CoStar-copyrighted photographs that had been

11  cropped, then further altered by the addition of a "For rent in Lancaster, CA"

12  banner.  Below are two comparisons of (a) the original CoStar-copyrighted

13  photograph, bearing the CoStar logo, taken from Apartments.com, and (b) a screen

14  capture from the ApartmentHunterz.com URL that displayed an altered photo:

15  *CoStar Photograph*                    *ApartmentHunterz Capture*

16

17

18

19

20                     

21

22

23

24

25

26

27

28

---

22

*CoStar Photograph*                    *ApartmentHunterz Capture*





90.    By taking and publishing CoStar's content, including CoStar-copyrighted photographs and CoStar-verified listing information, without permission, Defendants' enterprise strikes at the heart of intellectual property law, and seeks to reap what they have not sown.

**V.    DEFENDANTS' HISTORY OF UNLAWFUL OPERATIONS AND DISREGARD FOR INTELLECTUAL PROPERTY RIGHTS FURTHER CONFIRMS DEFENDANTS' WILLFUL AND VOLITIONAL CONDUCT**

91.    Defendants' pattern of unlawful operations and theft of intellectual property over more than a decade—for which they have been sanctioned on at least three separate occasions by the California Bureau of Real Estate (the "Bureau" or the "Department")[3]—underscores that Defendants' conduct is willful and

_____

[3] Prior to July 1, 2013, the California Bureau of Real Estate was known as the California Department of Real Estate.  For ease of reference, it is referred to as the Bureau herein, except in citations to administrative orders issued when it was still

volitional, and that the Shayans know their conduct is unlawful.  Defendants have flagrantly and repeatedly violated numerous provisions of the California Real Estate Law, including by displaying listing information and photographs obtained from third party real estate websites without authorization.

92.     Indeed, in testimony in hearings before the Bureau arising from their unlawful conduct, the Shayans *admitted* to employing the same basic *modus operandi* they now employ in infringing upon CoStar's copyrighted content and misappropriating its time-sensitive listing information—*i.e.*, copying listing information, including copyrighted photographs, without permission from legitimate residential rental listing websites and passing that information off as their own in order to induce potential renters to pay subscription fees to Defendants.

93.     Defendants' past conduct, including their litigation and regulatory history, is relevant to the issues of willfulness, damages and injunctive relief. Defendants' repeated prior disregard for intellectual property rights supports a finding of willfulness in this action, and Defendants' recidivism is relevant to the determination of damages aimed at deterring future infringement and contractual breaches, and to the issuance of injunctive relief to address the prospect of future misconduct.

94.     The Shayans' experience in Apartment Hunters' past legal and regulatory issues, as both testifying witnesses and as the registered agent for Apartment Hunters, similarly is relevant both to their knowledge of what conduct is unlawful and to establishing contributory infringement.

**A.     The Shayans' Unlicensed Operation of a PrePaid Rental Listing Service**

95.     The Bureau, a division of the Department of Consumer Affairs, and

known as the Department.

its chief officer, the Real Estate Commissioner (the "Commissioner"), is responsible for enforcing the California Real Estate Law, Cal. Bus. & Prof. Code §§ 10000 *et seq.* (the "Code" or the "Real Estate Law").

96.    In California, individuals and companies must be licensed by the Bureau to operate a "Prepaid Rental Listing Service" ("PRLS")—the "business of supplying prospective tenants with listings of residential real properties for tenancy, by publication or otherwise, pursuant to an arrangement under which the prospective tenants are required to pay an advance or contemporaneous fee (1) specifically to obtain listings or (2) to purchase any other product or service in order to obtain listings, but which does not otherwise involve the negotiation of rentals by the person conducting the service." Cal. Bus. & Prof. Code §§ 10167(a), 10167.2.

97.    According to public records, the Shayans have operated a PRLS in California since at least 2001, under names including "Apartment Hunters," "4 Rent in LA," "4 Rent in San Francisco" and through websites including www.ApartmentHunterz.com, www.4rentinla.com, and www.rentinsanfrancisco.com. According to public records, neither of the Shayans have ever been licensed by the Bureau in any individual capacity.

98.    In October 2005, the Commissioner issued a Desist and Refrain Order to Steven Shayan, finding that he had operated a PRLS without a license in violation of Code § 10167.2 since at least 2001 under multiple business names, and ordering him to desist and refrain from engaging in business as a PRLS, individually or under any fictitious name, unless and until properly licensed under the Code. *See* Order to Desist and Refrain, Case No. H-32271 LA (Cal. Dept. of Real Est. Oct. 18, 2005) (attached hereto as Exhibit B).

**B.     The Shayans' Continued Unlicensed Operation of a PrePaid Rental Listing Service, and Admitted Posting of Third Parties' Real Estate Listings as Their Own**

99.     The Bureau's Desist and Refrain Order evidently had little effect on the Shayans, as their unlawful activity continued unabated.

100.     Although Steven Shayan received the Desist and Refrain Order, Apartment Hunters continued to solicit members and operate as a PRLS business under its own name (AHI), as well as under the unlicensed fictitious business names "4RentlnLA" and "RentlnSanFrancisco."  *See* Decision After Rejection, Case No. H-36458, at *5 (Cal. Dept. of Real Estate Sept. 29, 2011) (attached hereto as Exhibit C).

101.     Apartment Hunters eventually was licensed by the Bureau as a PRLS on May 11, 2007, but was not licensed to conduct PRLS business under any other fictitious names.  *Id.* at *6.  Nonetheless, Defendants continued to operate as a PRLS under unlicensed fictitious business names, *id.*, including making misleading, deceptive, and/or false representations that websites and/or businesses operating in those fictitious names were licensed by the Bureau, *id.* at *9–10.

102.     During this time, the Bureau received a number of complaints regarding Defendants' activities and websites operated by Defendants.  For instance, in 2008, the Bureau received a written complaint from an agent working for Coldwell Banker, a leading real estate broker, that Defendants' website included a listing for a property indicating it was available for rent, despite the property in fact not having been available for rent—and despite Defendants never having been authorized by the owner or property manager to list the property as available for rent.  *See id.* at *7–8.

103.     This complaint was revealed to be the tip of the iceberg.  A Bureau investigator thereafter determined in 2009 that websites operated by Defendants

were the subject of roughly *three dozen* Better Business Bureau complaints in the prior three years, all relating to their PRLS listing services.   *See id.* at *8–9.

104.   Testifying during a hearing before the Bureau's administrative law judge, the Shayans admitted that Defendants' *"agents and employees gleaned rental listings from other rental service listings*, such as Craigslist and the national MLS *and posted those listings as their own for a fee."  Id.* at *10 (emphases added).

105.   In a Decision issued in September 2011, the Commissioner concluded that Defendants unlawfully (a) engaged in PRLS business under unregistered fictitious names, including doing so after receipt of the 2005 Desist and Refrain Order, violating Code §§ 10167.2(a), and 10167.3(a); (b) utilized PRLS contracts not approved (and in fact previously rejected) by the Bureau, violating Code § 10167.9; (c) failed to timely confirm the availability of listings, violating Code § 10167.11; and (d) failed to provide timely refunds, violating Code § 10167.10(b)(2).  *Id.* at *11–12.

106.   Accordingly, pursuant to Code § 10167.12(a)(1), the Commissioner revoked Apartment Hunters' license to operate a PRLS.  *Id.* at *15.  After a motion for reconsideration by Apartment Hunters, the penalty was reduced, and it was granted the right to apply for a "restricted PRLS license" pursuant to Code § 10156.5.

**C.   Defendants' Unauthorized Posting of Copyrighted—and Defendant-Doctored—Real Estate Photographs and Listings**

107.   Defendants remained unaffected by the Board's sanction.  On April 11, 2014, the Deputy Commissioner filed a new claim charging Apartment Hunters with violating Code § 10167.11(b) by providing false, misleading, or deceptive advertisements to prospective tenants.  Pursuant to Code § 10156.7, Apartment Hunters' restricted PRLS license was suspended, effective May 8, 2014 (the

"Suspension Order").

108.   The new April 2014 claim was the result of a complaint received by the Bureau from the co-owner of Hometeam Property Management, who discovered that Defendants had "*without Hometeam's authorization, used copyrighted pictures and information about four separate rental properties listed on Hometeam's website; and, without written or oral permission, posted said pictures and information about the properties on different websites* including, but not limited to, Trulia and Zillow.  Specifically, Respondents copied photographs of the four properties displayed on Hometeam's website, *eliminated the 'Hometeam' watermark inserted on the photographs by cropping and shrinking the borders of the photographs*, and placed an 'ApartmentHunterZ' watermark on the photographs.  The photographs and information from Hometeam's website concerning the four properties, as well as [Apartment Hunters'] website address, were placed on promotions for the properties found on the other websites." Proposed Decision, Case No. H-39404 LA, *4 (Cal. Bur. of Real Estate May 27, 2015) (the "Proposed Decision") (emphases added) (attached hereto as Exhibit D).

109.   In short, Defendants were accused of misconduct that mirrors many of the unlawful actions at issue in this case: copying copyrighted photographs without permission, taking steps to disguise the infringement by doctoring the photographs to replace the watermark, misappropriating the related listing information, and, without authorization, presenting the photographs and related listing information on Defendants' website in competition with the owners and originators of that content.

110.   The Administrative Law Judge presiding over the ensuing hearing found Kevin Shayan's testimony that he had obtained consent to list the four properties "*not convincing*," and Shayan admitted that he made no effort to obtain consent from the properties' owners to promote them on other websites.  *Id.* at *5

(emphasis added).

111.   Kevin Shayan also admitted in his testimony that an Apartment Hunters' user would receive access to the property address and contact information for these properties only after paying a monthly subscription fee to Apartment Hunters, *id.* at *4—in other words, admitting that the impermissibly copied listings at issue were used to induce users to pay fees to Apartment Hunters.

112.   The Judge concluded that, by the forgoing conduct, Apartment Hunters violated Code § 1067.11(b)(2) by promoting and advertising four properties in a false, misleading or deceptive way, and violated Code § 1067.11(b)(4) *by not obtaining permission to list the properties by their owner, manager or authorized agent.  See* Proposed Decision at *8.[4]

113.   The Judge also concluded that Apartment Hunters had "ignored" the May 2014 Suspension Order, noting that Kevin Shayan admitted that Apartment Hunters was continuing to engage in PRLS activity through the present.  *Id.* at *7. The Judge thus found that Apartment Hunters had willfully and deliberately violated Code §§ 10167.2 and 10130, noting that "Respondents do not dispute that they engaged in unlicensed activity.  They only provided excuses for doing so. However, *none of their excuses are valid justification for breaking the law.*"  *Id.* at *12 (emphasis added).

114.   Based on the forgoing, the Judge concluded there was cause to sustain the Suspension Order, a conclusion the Commissioner ultimately adopted (along with the Judge's entire proposed order).  *See* Decision, Case No. H-39404 LA (Cal. Bur. of Real Estate July 1, 2015) (attached hereto as Exhibit E).

---

[4] The Bureau's investigation also revealed that Defendants failed to notify the Bureau after abandoning their registered offices; the Judge found Kevin Shayan's testimony on this topic to be "self-serving, uncorroborated and for those reasons not persuasive."  Proposed Decision at *6.  Apartment Hunters' conduct in abandoning its office was found to have violated, among other provisions, Code § 10167.5.  *Id.* at *9.

115.   In justifying his decision, the Judge wrote: "*Respondents have been unapologetic for any of this misconduct.  Instead, Respondents present a picture of a licensee with little regard for the Commissioner and no desire to comply with the rules and regulations established by the Commissioner.  Respondents have presented no evidence indicating such misconduct will not occur again soon*." Proposed Decision at *12 (emphasis added).

* * * * *

116.   Sadly, the Judge's warning has proved prophetic:  Defendants have continued to operate outside the law, and now wrongly seek to profit from the CoStar-verified time-sensitive listing information and copyrighted photographs that CoStar has obtained at great expense.

117.   CoStar brings this action to vindicate its rights under federal and state law and stop Defendants' willful infringement of CoStar's copyrights, the misappropriation of CoStar's listing information, and Defendants' consequent engagement in unfair competition.

## CAUSES OF ACTION

**COUNT ONE: Direct Copyright Infringement Against All Defendants**

118.   CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

119.   Each of CoStar's photographs constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

120.   CoStar owns or has exclusive rights to all rights, title, and interest in and to the photographs.

121.   Defendants had and have access to CoStar photographs through the internet or other means.

122.   Defendants have copied, reproduced, republished, distributed to the public, and/or displayed publicly CoStar-copyrighted photographs—including

without limitation those copyrighted works identified in Exhibit A hereto—without the consent or authority of CoStar, thereby infringing CoStar's copyrights.

123.   CoStar owns the exclusive rights in each of the photographs detailed in Exhibit A.  Prior to the filing of this suit, CoStar has validly registered, or has submitted a complete application for registration for, each of the photographs detailed in Exhibit A with the United States Copyright Office.  Defendants copied, republished, distributed, and publicly displayed on ApartmentHunterz.com without authorization each of the copyrighted photographs detailed in Exhibit A.

124.   Upon information and belief, Defendants' unlawful copying, republishing, distributing, and public displaying of the CoStar photographs began in the months following the previously described "re-launch" of Apartments.com. On information and belief, a valid registration was obtained or a valid registration application was submitted by CoStar for each photograph detailed in Exhibit A prior to Defendants' first infringement of the photograph.

125.   Defendants' copies, reproductions, republications, distributions, and displays are identical and/or substantially similar to CoStar's photographs.

126.   Apartment Hunters is directly liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

127.   The Shayans are jointly and severally liable for each act of Apartment Hunters' direct infringement because, upon information and belief, they personally directed and participated in and benefited from Apartment Hunters' infringing conduct as alleged above.

128.   The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

129.   Defendants' acts of infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act. Defendants knew their acts were infringing and intentionally or recklessly

1   disregarded the law by their conduct.

2   130.   CoStar did not authorize Defendants' acts.

3   131.   CoStar believes that additional instances of Defendants' infringement

4   of its copyrighted photographs, both on ApartmentHunterz.com and other websites

5   and domains owned or operated by Defendants, will be revealed during the

6   discovery process.

7   132.   As a result of Defendants' willful copyright infringement, CoStar has

8   been and will continue to be damaged as a direct and proximate result of the

9   infringing acts set forth above, and Defendants have been unjustly enriched by

10  their unlawful infringement of CoStar's copyrighted photographs in an amount to

11  be proven at trial.

12  133.   Defendants' conduct also has caused irreparable and incalculable

13  harm and injuries to CoStar and is ongoing.  Unless enjoined, Defendants' conduct

14  will cause further irreparable and incalculable injury, for which CoStar has no

15  adequate remedy at law.

16  **COUNT TWO: Contributory Copyright Infringement Against the Shayans**

17  134.   CoStar repeats and realleges each and every allegation set forth above,

18  and incorporates them herein by reference.

19  135.   Apartment Hunters has directly infringed CoStar's works to which

20  CoStar owns exclusive rights under copyright—including without limitation those

21  copyrighted works identified in Exhibit A hereto—by copying, reproducing,

22  republishing, distributing to the public, and/or displaying publicly CoStar-

23  copyrighted photographs owned by CoStar, without authorization from CoStar, or

24  right under law, in violation of the Copyright Act.  The Shayans are liable as

25  secondary infringers under the Copyright Act for each act of direct infringement of

26  CoStar's works by Apartment Hunters.

27  136.   The Shayans are liable under the Copyright Act for the infringing acts

28

of Apartment Hunters as contributory copyright infringers.  The Shayans had actual and constructive knowledge of Apartment Hunters' infringement of CoStar's copyrighted works.  Despite having that knowledge, the Shayans continued to cause, contribute materially to, and/or induce that infringement as set forth above.  Without the active and material contributions from the Shayans, the infringement CoStar details above could not have taken place.  The Shayans therefore are contributorily liable for Apartment Hunters' direct infringement of CoStar's copyrighted works in violation of the Copyright Act.

137.   The Shayans likewise are liable for the acts of infringement identified above for acting in concert with Apartment Hunters to operate Apartment Hunters' network of websites and for personally directing, participating in, and benefiting from Apartment Hunters' infringing conduct as alleged herein.

138.   The Shayans' acts of contribution to copyright infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act.  The Shayans knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct.

139.   CoStar did not authorize the Shayans' acts.

140.   CoStar believes that additional instances of Defendants' infringement of its copyrighted photographs will be revealed during the discovery process.

141.   As a result of the Shayans' willful contribution to copyright infringement, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and the Shayans have been unjustly enriched by their unlawful infringement of CoStar's copyrighted materials in an amount to be proven at trial.

142.   The Shayans' conduct also has caused irreparable and incalculable harm and injuries to CoStar and is ongoing.  Unless enjoined, the Shayans' conduct will cause further irreparable and incalculable injury, for which CoStar has no

1    adequate remedy at law.

2          **COUNT THREE: Misappropriation Against All Defendants**

3          143.   CoStar repeats and realleges each and every allegation set forth above,

4    and incorporates them herein by reference.

5          144.   CoStar has invested substantial time, labor, skill, and financial

6    resources into the creation and maintenance of Apartments.com, its computer

7    systems and servers, including system and server capacity, as well as the content

8    on the Apartments.com website.

9          145.   The CoStar-verified listings displayed on the Apartments.com website

10   are time-sensitive.  The Apartments.com content is updated in real time, an

11   indispensible feature of the website that attracts users to the website and

12   contributes to its value.

13         146.   Without authorization, Defendants wrongfully access and appropriate

14   the Apartments.com website, computer systems and servers, and its content

15   without having to make the substantial investment in time, labor, skill, and

16   financial resources made by CoStar.  Defendants are in direct competition with

17   CoStar and have made CoStar's content available to their customers and other third

18   parties.  As such, Defendants' use of CoStar's computer systems and servers,

19   including system and server capacity, as well as CoStar's content constitutes free-

20   riding on CoStar's substantial investment of time, effort, and expense.  Defendants

21   are reaping where they have not sown.

22         147.   As a result of this misappropriation, Defendants wrongfully compete

23   and/or enable others to compete, with CoStar, and CoStar has been forced to

24   expend additional time and resources, including but not limited to, investigating

25   Defendants' activities and attempting to prevent such misappropriation by

26   technological means.

27         148.   CoStar has been and will continue to be damaged as a result of

28

Defendants' misappropriation of CoStar's valuable information and property.  If permitted to continue, the ability of Defendants and other parties to free-ride on CoStar's substantial investment would so reduce its incentive to produce products or services such as Apartments.com that the existence or quality of these products or services would be substantially threatened.

149.   CoStar has suffered and will continue to suffer irreparable injury, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.

**COUNT FOUR: California Unfair Competition Against All Defendants**

150.   CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

151.   By the acts described herein, Defendants have engaged in unlawful business practices by misappropriating CoStar's property, as set forth in Count Three.  These unlawful business practices have injured and will continue to injure CoStar in its business and property, in violation of California Business and Professions Code § 17200, *et seq*.

152.   Defendants' acts alleged herein have caused monetary damages to CoStar in an amount to be proven at trial, and have caused, and will continue to cause, irreparable injury to CoStar, unless and until Defendants are permanently enjoined.

153.   As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, CoStar prays for judgment against all Defendants as follows:

A.     For an order pursuant to 17 U.S.C. § 502 permanently enjoining and restraining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringements of CoStar's exclusive rights under the Copyright Act, or from authorizing any other person to do the same;

B.     For an award pursuant to 17 U.S.C. § 504 of CoStar's actual damages and Defendants' profits or, alternatively at CoStar's election, for statutory damages for Defendants' infringement and willful infringement—including without limitation for the instances of infringement identified in Exhibit A, and other instances of infringement uncovered during discovery—in the maximum amount allowable by law;

C.     For a finding that Defendants have willfully infringed CoStar's federally registered copyrights;

D.     For an award of damages from Defendants' misappropriation of CoStar data and information;

E.     For an order permanently enjoining and restraining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the misappropriation of CoStar data and information;

F.     For an order granting restitution and disgorgement of Defendants' wrongful gains from their unfair competition;

G.     For an order permanently enjoining and restraining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling,

1  inducing, causing, materially contributing to, or otherwise facilitating Defendants'

2  unfair competition;

3       H.     For an award of CoStar's costs, including its reasonable attorneys'

4  fees;

5       I.     For pre-judgment and post-judgment interest according to law;

6       J.     For such further and additional relief as the Court may deem just and

7  proper.

8  **DEMAND FOR A JURY TRIAL**

9       CoStar demands a trial by jury on all issues properly tried to a jury.

10

11       Respectfully submitted,

12

13  Dated:  December 18, 2015     CALDWELL LESLIE & PROCTOR, PC

14       */s/  Kelly L. Perigoe*

     Kelly L. Perigoe (Cal. Bar No. 268872)

15       725 South Figueroa Street, 31st Floor

     Los Angeles, CA 90017-5525

16       Telephone: (213) 629-9040

17       Facsimile: (213) 629-9022

     perigoe@caldwell-leslie.com

18

19       WILLIAMS & CONNOLLY LLP

     Nicholas J. Boyle (*pro hac vice application*

20       *forthcoming*)

21       David K. Baumgarten (*pro hac vice*

     *application forthcoming*)

22       Eric J. Hamilton (Cal. Bar No. 296283; *C.D.*

23       *Cal. admission pending*)

     725 Twelfth Street, N.W.

24       Washington, DC 20005

25       (202) 434-5000 (phone)

     (202) 434-5029 (facsimile)

26       *Attorneys for CoStar Realty*

27       *Information, Inc., and Apartments, LLC*

28